**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LEVENRAL D. POLK,
            *Petitioner-Appellant,*

v.

BRIAN SANDOVAL; STATE OF
NEVADA, et al.,
            *Respondents-Appellees.*

No. 06-15735

D.C. No.
CV-03-00125-PMP

OPINION

Appeal from the United States District Court
for the District of Nevada
Philip M. Pro, District Judge, Presiding

Argued and Submitted
February 14, 2007—Berkeley, California

Filed September 11, 2007

Before: Betty B. Fletcher, Richard R. Clifton, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge B. Fletcher

**COUNSEL**

Lori C. Teicher, Assistant Federal Public Defender, Las Vegas, Nevada, for the petitioner-appellant.

George J. Chanos, Attorney General, Robert E. Weiland (argued), Senior Deputy Attorney General, Criminal Justice Division, Reno, Nevada, for the respondents-appellees.

**OPINION**

B. FLETCHER, Circuit Judge:

Levenral Demarlo Polk, a Nevada state prisoner, appeals the denial of his petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his conviction for first-degree murder with a deadly weapon and discharge of a firearm from a motor vehicle. We have jurisdiction pursuant to 28 U.S.C. § 2253. We hold that Polk's federal constitutional right to due

process was violated because the instructions given at his trial permitted the jury to convict him of first-degree murder without a finding of the essential element of deliberation. The error was not harmless. We reverse and remand to the district court to grant the writ unless the State elects to retry Polk within a reasonable time.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On the night of December 14, 1998, Levenral Demarlo Polk drove around Las Vegas in a car borrowed from his girlfriend, Leslie Harris. Polk's longtime friend, Walter ("Wattie" or "Y.T.") Hodges, was a passenger in the car. Near the intersection of Owens Avenue and Nellis Boulevard, witnesses heard several gunshots and saw Hodges fall out of a car that looked like Harris's and into the street in front of a bus stop as the car drove away.

On March 16, 1999, the State of Nevada charged Polk in the Clark County District Court with the first-degree murder of Hodges with use of a deadly weapon and discharging a firearm out of a motor vehicle. Nevada Revised Statutes § 200.010 defined murder as "the unlawful killing of a human being, with malice aforethought, either express or implied." Nev. Rev. Stat. § 200.010 (1999). Murder of the first degree is murder "[p]erpetrated by means of poison, lying in wait or torture, or by any other kind of willful, deliberate *and* premeditated killing." Nev. Rev. Stat. § 200.030(1)(a) (1999) (emphasis added). Murder of the second degree is "all other kinds of murder." Nev. Rev. Stat. § 200.030(2) (1999).

A five-day jury trial was held. Most of the evidence went to the issue of identity. The State presented the following evidence regarding premeditation and deliberation: Donnette Peach, Polk's ex-girlfriend, testified that in September or October 1998, she witnessed an argument between Polk and Hodges over money related to their drug dealing. She testified that Polk said to Hodges, "I won't fight you. I'll shoot you.

I like to shoot people." She also testified that she thought this fight was not serious although it was different from previous fights between Polk and Hodges.

Thomas Tocco, a manager of a Checker Auto Parts store located at the intersection of Owens Avenue and Nellis Boulevard, testified that he was at the store on the night of December 14 when he heard male voices arguing shortly before he heard gunshots. He did not see who was arguing.

Earlier in the evening of December 14, Polk and Hodges stopped by Roshandia Leatherwood's apartment. While Hodges waited in the car, Polk went inside to borrow a bullet-proof vest from Renardy ("Buddha") Neau, Roshandia's boyfriend. Neau testified that Polk wanted to borrow his vest for protection because Polk had gotten into a "scuffle" with "some dudes" and that he put on the vest before he left the apartment. Neau also testified that he had wanted to sell the vest, but Polk did not offer to sell the vest for him. Other witnesses testified that they saw Polk wearing the vest. Polk brought the vest back later that night.

According to Polk, he borrowed the vest in order to sell it for Neau. Polk testified that because the vest was stolen, he put it under his shirt as he walked out of the apartment complex so that it would not be seen on the security cameras. He did not tell detectives about the vest in his initial statement because it was stolen. Polk testified that after he left Leatherwood's apartment, he dropped off Hodges at 28th Street, where Hodges planned to sell drugs, and that he drove to Oasis Ridge to sell the vest to someone named Mike. Polk testified that Mike did not have enough money to buy the vest, so he gave it back to Neau later that night.

The jury was instructed on the definitions of first- and second-degree murder. *See* Instruction No. 13 ("Murder of the First Degree is murder which is perpetrated by any kind of willful, deliberate and premeditated killing."); Instruction No.

15 ("Murder of the second degree is murder with malice aforethought, but without the admixture of premeditation. [¶] All murder which is not murder of the first degree is murder of the second degree."). Instruction No. 14 defined premeditation as follows:

> Premeditation is a design, a determination to kill, distinctly formed in the mind at any moment before or at the time of the killing.
>
> Premeditation need not be for a day, an hour or even a minute. It may be as instantaneous as successive thoughts of the mind. For *if the jury believes* from the evidence *that the act constituting the killing has been preceded by and has been the result of premeditation*, no matter how rapidly the premeditation is followed by the act constituting the killing, *it is willful, deliberate and premeditated murder.*

Instruction No. 14 (emphasis added). Defense counsel objected to this instruction, known as the *Kazalyn* instruction,[1] on the ground that it defined willful, deliberate, and premeditated as "the same thing," violating Polk's Sixth Amendment right to a fair trial and his Fifth and Fourteenth Amendment right to due process. Defense counsel requested the addition of a definition for "deliberate" at the end of Instruction No. 14: "Deliberate means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed cause of action." The trial court overruled the objection and declined to adopt the proposed instruction.

In closing, the prosecutor emphasized that "[p]remeditation can be formed at the time of the killing as instantaneous as successive thoughts of the mind," and argued that both pre-

---

[1] This instruction first appeared in *Kazalyn v. State*, 825 P.2d 578 (Nev. 1992).

meditation and deliberation had been proven because "this man borrows and puts on a bulletproof vest, takes out his handgun, and shoots it into the body of this person not once, but twice, and missing a couple other times . . . . So this is first degree murder, ladies and gentlemen. This is not second degree murder." In response, defense counsel pointed to evidence showing that Polk did not put on the vest and argued that the fact that Polk picked up the vest did not show that he intended to kill Hodges. The prosecutor argued in rebuttal that first-degree murder required only "successive thoughts of the mind":

> Premeditation, you can talk about the vest all you want. It doesn't matter if he had the vest or not. That's just one fine nuance that we have, because *it only takes successive thoughts of the mind. All it takes is pointing the weapon and pulling the trigger.* That's successive thoughts of the mind. Or the second shot or the third shot or the fourth shot. . . . [I]t's the successive shots that helps you out in that regard.

(Emphasis added).

The jury found Polk guilty of first-degree murder with a deadly weapon and discharging a firearm out of a motor vehicle. The trial court sentenced Polk to two consecutive life terms in prison without the possibility of parole and a consecutive term of 40 to 180 months. Polk appealed to the Nevada Supreme Court. Polk raised several arguments on appeal, including the argument that the *Kazalyn* instruction deprived him of a fair trial. He argued that the rule recently announced by the Nevada Supreme Court in *Byford v. State*, 994 P.2d 700 (Nev. 2000), should be applied to him.[2]

---

[2]*Byford* was decided after Polk's judgment of conviction but before his opening brief on appeal was filed.

In *Byford*, the Nevada Supreme Court identified a major shortcoming in the *Kazalyn* instruction: it did not give effect to all three elements of first-degree murder under Nevada Revised Statutes § 200.030(1)(a)—willfulness, premeditation, and deliberation. *Byford*, 994 P.2d at 712-14. As a result, the court directed that the *Kazalyn* instruction should not be given in future cases. *Id.* at 714-15. The court held:

> By defining only premeditation and failing to provide deliberation with any independent definition, the *Kazalyn* instruction blurs the distinction between first- and second-degree murder.
>
> . . . "It is clear from the statute that *all three elements*, willfulness, deliberation, and premeditation, must be proven beyond a reasonable doubt before an accused can be convicted of first degree murder."
>
> In sum, the *Kazalyn* instruction and [related caselaw] do not do full justice to the phrase "willful, deliberate, and premeditated." Deliberation remains a critical element of the *mens rea* necessary for first-degree murder, connoting a dispassionate weighing process and consideration of consequences before acting. "In order to establish first-degree murder, the premeditated killing must also have been done deliberately, that is, with coolness and reflection."
>
> Because deliberation is a distinct element of *mens rea* for first-degree murder, we direct the district courts to cease instructing juries that a killing resulting from premeditation is "willful, deliberate, and premeditated murder." Further, if a jury is instructed separately on the meaning of premeditation, it should also be instructed on the meaning of deliberation.

*Byford*, 994 P.2d at 713-14 (internal citations omitted). The court provided a new instruction for district courts to use in

first-degree murder cases. *Id.* at 714. This instruction clarifies that "[a]ll three elements—willfulness, deliberation, and premeditation—must be proven beyond a reasonable doubt before an accused can be convicted of first-degree murder," *id.* at 714, and it includes separate definitions of willfulness, deliberation, and premeditation, *id.* at 714-15.[3]

While Polk's appeal was pending, the Nevada Supreme Court clarified that *Byford* "does not hold that giving the

---

[3]"Deliberation" is defined as

> [T]he process of determining upon a course of action to kill as a result of thought, including weighing the reasons for and against the action and considering the consequences of the action.

> A deliberate determination may be arrived at in a short period of time. . . . A mere unconsidered and rash impulse is not deliberate, even though it includes the intent to kill.

*Byford*, 994 P.2d at 714.

"Premeditation" is defined in a similar way as in the *Kazalyn* instruction —"a design, a determination to kill, distinctly formed in the mind by the time of the killing" that "may be as instantaneous as successive thoughts of the mind." However, the new instruction adds the following,

> The law does not undertake to measure in units of time the length of the period during which the thought must be pondered before it can ripen into an intent to kill which is truly deliberate and premeditated.

> The time will vary with different individuals and under varying circumstances.

> The true test is not the duration of time, but rather the extent of the reflection. A cold, calculated judgment and decision may be arrived at in a short period of time, but a mere unconsidered and rash impulse, even though it includes an intent to kill, is not deliberation and premeditation as will fix an unlawful killing as murder of the first degree.

*Id.* at 714-15.

"Willfulness" is defined as "the intent to kill. There need be no appreciable space of time between formation of the intent to kill and the act of killing." *Id.* at 714.

*Kazalyn* instruction was error or violated any constitutional rights." *Garner v. State*, 6 P.3d 1013, 1025 (Nev. 2000), *overruled on other grounds by Sharma v. State*, 56 P.3d 868 (Nev. 2002). Like Polk, Garner received the *Kazalyn* instruction at trial and argued that *Byford* required reversal of his conviction, which had not yet become final. *Id.* at 1024-25. However, unlike Polk, Garner did not object at trial to the *Kazalyn* instruction "and therefore failed to preserve this issue for appeal absent a showing of plain or constitutional error. Use of the *Kazalyn* instruction in trials which predate *Byford* does not constitute plain or constitutional error." *Id.* at 1025. Moreover, the court held that *Griffith v. Kentucky*, 479 U.S. 314, 322 (1987), did not require retroactive application because "*Byford* does not invoke any constitutional mandate in directing that its new instructions be given in future cases, so there is no constitutional requirement that this direction have any retroactive effect." *Garner*, 6 P.3d at 1025.

The Nevada Supreme Court rejected each of Polk's arguments on appeal and affirmed his conviction. The following is the court's analysis of Polk's due process claim:

> [A]ppellant contends that the district court erred in giving an instruction this court approved in *Kazalyn v. State* regarding premeditation and deliberation because the instruction is clearly erroneous under this court's subsequent holding in *Byford v. State*. Appellant also argues that the district court erroneously rejected a proposed premeditation instruction which separately defined premeditation and deliberation. We recently clarified *Byford*, as follows: "Our opinion in *Byford* concludes that the *Kazalyn* instruction does not fully define 'willful, deliberate, and premeditated,' and it provides other instructions for future use—but it does not hold that giving the *Kazalyn* instruction constituted error, nor does it articulate any constitutional grounds for its decision." [citing *Garner*, 6 P.3d at 1024] Further "[u]se

of the *Kazalyn* instruction in trials which predate *Byford* does not constitute plain or constitutional error. Nor do the new instructions required by *Byford* have any retroactive effect on convictions which are not yet final: the instructions are a new requirement with prospective force only." [citing *Garner*, 6 P.3d at 1025.] Because appellant's trial predated *Byford*, we conclude that the district court's use of the *Kazalyn* instruction, rather than appellant's proposed instruction, was not error. Accordingly, appellant's argument lacks merit.

Polk filed a pro se petition for writ of habeas corpus in the Clark County District Court, raising several issues not raised in his direct appeal. The district court denied his petition. Polk appealed to the Nevada Supreme Court. The Nevada Supreme Court denied his petition.

On October 29, 2003, Polk filed a petition for writ of habeas corpus in the United States District Court for the District of Nevada. He raised nine grounds for relief, each of which had been presented to the Nevada Supreme Court either on direct or collateral review: (1) his equal protection and fair trial rights were violated by the state's discriminatory peremptory strike of an African-American prospective juror; (2) his due process and fair trial rights were violated by erroneous admission of evidence that Polk had possessed a handgun and made prior threats to Hodges; (3) his due process and fair trial rights were violated by the prosecutor's forcing him to testify on cross-examination that other witnesses were lying; (4) his due process right was violated by the *Kazalyn* instruction, which improperly minimized the state's burden of proof; (5) his due process right was violated by the trial court's rejection of his proposed reasonable doubt instruction; (6) his due process right was violated by the prosecution's knowing use of false testimony to obtain his conviction; (7) his due process and fair trial rights were violated by the trial court's failure to grant his motion to voluntarily dismiss his

habeas petition so that he could add additional claims; (8) his right to effective assistance of trial counsel was violated; and (9) his right to effective assistance of appellate counsel was violated.

The district court denied his petition. In rejecting Polk's due process claim, the court held that considering the evidence presented at trial and the instructions as a whole, the use of the *Kazalyn* instruction did not render Polk's trial fundamentally unfair.

On appeal, Polk raises each argument presented in his habeas petition except for the issues of voluntary dismissal and the rejection of his proposed reasonable doubt instruction. We hold that Polk's federal constitutional right to due process was violated by the use of the *Kazalyn* instruction because it relieved the State of its burden of proving every element of first-degree murder beyond a reasonable doubt.[4] The Nevada Supreme Court's decision to the contrary was "contrary to clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). Since this error was not harmless, we reverse and remand to the district court to grant the writ unless the State elects to retry Polk within a reasonable time.

## II.   STANDARD OF REVIEW

A district court's denial of habeas relief is reviewed de novo. *Beardslee v. Woodford*, 358 F.3d 560, 568 (9th Cir. 2004). The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies because Polk filed his petition after AEDPA's effective date. *Stevenson v. Lewis*, 384 F.3d 1069, 1071 (9th Cir. 2004). Under AEDPA, a habeas petitioner cannot obtain relief based on a claim adjudicated on the merits in state court unless the adjudication of the claim

---

[4]Polk's other grounds for relief have no merit. We do not address them here.

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

To obtain relief under 28 U.S.C. § 2254(d)(1), there must be clearly established Supreme Court law. *Williams v. Taylor*, 529 U.S. 362, 412 (2000) ("§ 2254(d)(1) restricts the source of clearly established law to this Court's jurisprudence."); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (" '[C]learly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."). The state court decision must be either "contrary to" or an "unreasonable application of" that precedent. *Id.* at 405-09. A state court decision is "contrary to" clearly established law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.

In reviewing a state court decision under § 2254(d)(1), we look to the last reasoned decision of the state court as the basis of the state court's judgment. *Benson v. Terhune*, 304 F.3d 874, 880 n.5 (9th Cir. 2002). Here, we review the Nevada Supreme Court's decision on direct appeal, since that is the last reasoned state court decision on Polk's claim that the *Kazalyn* instruction violated his right to due process.

## III.  DISCUSSION

### A.  Due Process

**[1]** It is clearly established federal law, as determined by the Supreme Court, that a defendant is deprived of due process if a jury instruction "ha[s] the effect of relieving the State of the burden of proof enunciated in *Winship* on the critical question of petitioner's state of mind." *Sandstrom v. Montana*, 442 U.S. 510, 521 (1979); *Francis v. Franklin*, 471 U.S. 307, 326 (1985) (reaffirming "the rule of *Sandstrom* and the wellspring due process principle from which it was drawn."); *see also In re Winship*, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

In reviewing a habeas petition, "[t]he only question . . . is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (internal quotation marks and citation omitted). "[T]he instruction . . . must be considered in the context of the instructions as a whole and the trial record." *Id.* "If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam) (quoting *Estelle*, 502 U.S. at 72) (internal quotation marks omitted). A "reasonable likelihood" is lower than the "more likely than not" standard but higher than a mere "possibility." *See Boyde v. California*, 494 U.S. 370, 380 (1990); *see also Sarausad v. Porter*, 479 F.3d 671, 692 (9th Cir. 2007).

**[2]** Under Nevada Revised Statutes § 200.030(1)(a), first-degree murder is a willful, deliberate, and premeditated killing. In *Byford*, the Nevada Supreme Court reaffirmed that "[i]t is clear from the statute that *all three elements*, willful-

ness, deliberation, and premeditation, must be proven beyond a reasonable doubt before an accused can be convicted of first degree murder." 994 P.2d at 713-14 (internal quotation marks and citation omitted). It is not sufficient for the killing simply to be premeditated. The court held:

> Deliberation remains a critical element of the *mens rea* necessary for first-degree murder, connoting a dispassionate weighing process and consideration of consequences before acting. "In order to establish first-degree murder, the premeditated killing must also have been done deliberately, that is, with coolness and reflection."

*Id.* at 714 (citation omitted).

**[3]** Yet, Polk's jury was instructed to find "willful, deliberate, and premeditated murder" if it found premeditation: "For if the jury believes from the evidence that the act constituting the killing has been preceded by and has been the result of premeditation, no matter how rapidly the premeditation is followed by the act constituting the killing, it is willful, deliberate and premeditated murder." Instruction No. 14; *see Byford*, 994 P.2d at 714 ("direct[ing] the district courts to cease instructing juries that a killing resulting from premeditation is 'willful, deliberate, and premeditated murder.' ").

**[4]** This instruction is clearly defective because it relieved the state of the burden of proof on whether the killing was deliberate as well as premeditated. *See id.* at 713 ("By defining only premeditation and failing to provide deliberation with any independent definition, the *Kazalyn* instruction blurs the distinction between first- and second-degree murder."). Considering the instructions as a whole, we conclude that there is a reasonable likelihood that the jury applied the instruction in a way that violated Polk's right to due process. *See Estelle*, 502 U.S. at 72. The jury was instructed that "Murder of the First Degree is murder which is perpetrated by

any kind of willful, deliberate and premeditated killing." Instruction No. 13. So far, the elements of first-degree murder were clear. But Instruction No. 14 then defined away "willful" and "deliberate" by equating them with "premeditated," and Instruction No. 15 reinforced this error by using the terms "premeditation" and "deliberation" interchangeably. Instruction No. 15 provided, "Murder of the second degree is murder with malice aforethought, but without the admixture of premeditation. [¶] All murder which is not murder of the first degree is murder of the second degree." The State exacerbated the problem in its rebuttal by emphasizing premeditation and urging the jury to convict Polk of first-degree murder because "it only takes successive thoughts of the mind. All it takes is pointing the weapon and pulling the trigger."

[5] Instead of acknowledging the violation of Polk's due process right, the Nevada Supreme Court concluded that giving the *Kazalyn* instruction in cases predating *Byford* did not constitute constitutional error. In doing so, the Nevada Supreme Court erred by conceiving of the *Kazalyn* instruction issue as purely a matter of state law. Rather, the question of whether there is a reasonable likelihood that the jury applied an instruction in an unconstitutional manner is a "federal constitutional question." *See Francis*, 471 U.S. at 316. The state court failed to analyze its own observations from *Byford* under the proper lens of *Sandstrom*, *Franklin*, and *Winship*, and thus ignored the law the Supreme Court clearly established in those decisions—that an instruction omitting an element of the crime and relieving the state of its burden of proof violates the federal Constitution. *See Evanchyk v. Stewart*, 340 F.3d 933, 939-40 (9th Cir. 2003). Since the Nevada Supreme Court "fail[ed] to apply the correct controlling authority," its decision was contrary to clearly established federal law, as determined by the Supreme Court. *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003) (citing *Williams v. Taylor*, 529 U.S. 362, 413-14 (2000)).

## B.   Harmless Error

**[6]** Polk is not entitled to relief unless he can show that "the error had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks and citation omitted); *see also Fry v. Pliler*, 127 S.Ct. 2321 (2007); *California v. Roy*, 519 U.S. 2, 4-6 (1996) (per curiam) (applying harmless error standard to jury instructions that omit an element of the crime); *Evanchyk*, 340 F.3d at 940-41. "If we are in grave doubt as to whether the error had such an effect, the petitioner is entitled to the writ." *Coleman v. Calderon*, 210 F.3d 1047, 1051 (9th Cir. 2000). We conclude that the *Kazalyn* instruction did have a substantial and injurious effect or influence in determining the jury's verdict of first-degree murder.

As explained above, the instruction collapsed the three elements of first-degree murder (willfulness, deliberation, and premeditation) into one: premeditation. Premeditation was defined as being as "instantaneous as successive thoughts of the mind." This left no room for deliberation or "coolness and reflection" and permitted the jury to convict Polk of first-degree murder even if the determination to kill was a "mere unconsidered and rash impulse" or "formed in passion." *Byford*, 994 P.2d at 714. The State further blurred the line by arguing in closing that "[a]ll it takes is pointing the weapon and pulling the trigger. That's successive thoughts of the mind." It is reasonably probable that this error resulted in Polk being convicted of first-degree murder without the jury having first found the essential element of deliberation, or "the process of determining upon a course of action to kill as a result of thought, including *weighing the reasons for and against the action and considering the consequences of the action*," *Id.* (emphasis added).

The evidence against Polk was not so great that it precluded a verdict of second-degree murder. The State's evidence on

deliberation was particularly weak. The State points to only three pieces of evidence: (1) Polk had threatened and fought with Hodges about two months before the murder, (2) there was a loud argument at the scene of the murder shortly before gunshots were heard; and (3) Polk borrowed a bulletproof vest on the evening of the murder, which witnesses testified that he wore.

The first two items do not compel—or even strongly support—a finding of deliberation. In context, Polk's statement to Hodges more than a month before the incident that "I'll shoot you[,] I like to shoot people," does not show Polk was coolly planning to kill his long-time friend. Witnesses testified that Polk and Hodges, who had been friends since childhood, had a history of fighting and making up. Even Peach testified that she did not believe that the threat was serious. *See United States v. Jimison*, ___ F.3d ___, 2007 WL 2028131, at *2 (9th Cir. July 16, 2007) ("Most of us make empty statements out of frustration from time to time . . . . [T]hese exclamations . . . don't generally connote any intent to commit violence. This is especially true when the statement is made as a result of agitation or emotional distress, as was the case here.").

Second, witnesses heard arguing at the scene right before gunshots were fired. This evidence actually weighs against a finding of deliberation: it provides more support for the conclusion that Polk shot Hodges in the heat of the moment and without "coolness and reflection." Even the State argued, "[t]he defendant killed, and he killed for one reason only: anger." *Cf. Byford*, 994 P.2d at 712-13 (holding that the "evidence was sufficient for the jurors to reasonably find that before acting to kill the victim Byford weighed the reasons for and against his action, considered its consequences, distinctly formed a design to kill, and did not act simply from a rash, unconsidered impulse," where Byford had discussed shooting the victim with an accomplice beforehand, then participated in "calmly and dispassionately sh[ooting] the victim in the

absence of any provocation, confrontation, or stressful circumstances of any kind," by following up his accomplice's gunfire by "sa[ying] that he would make sure she was dead, and sh[ooting] her in the head twice.").

**[7]** In fact, there is only a single piece of evidence suggesting that Polk engaged in a deliberate weighing process and consideration of the consequences: the testimony that Polk borrowed a bulletproof vest a few hours before the murder. However, this evidence is weak support for a finding of deliberation. Donning a bulletproof vest is a defensive step. Although the jury could conclude that by undertaking such defensive planning, Polk was dispassionately weighing the risks and considering the consequences of killing Hodges, the defensive nature of this action more strongly suggests that Polk anticipated a confrontation which could dangerously escalate, and in which he might be a target. Moreover, the significance of the bulletproof vest evidence was undercut by the comments of the prosecutor, who told the jurors not to consider the implication of this evidence in light of the overriding importance of the erroneous *Kazalyn* instructions. The prosecutor told the jurors, "It doesn't matter if he had the vest or not. That's just one fine nuance that we have, because it only takes successive thoughts of the mind. All it takes is pointing the weapon and pulling the trigger."

**[8]** In light of the State's exceptionally weak evidence of deliberation, we simply cannot conclude that the *Kazalyn* error was harmless. Since we are left "in grave doubt" about whether the jury would have found deliberation on Polk's part if it had been properly instructed, we conclude that the error had a substantial and injurious effect or influence on the jury's verdict.

## IV.   CONCLUSION

The instructions given by the trial court permitted the jury to convict Polk for first-degree murder without finding all

three elements of the crime: willfulness, deliberation, and premeditation. Polk's federal constitutional due process right was violated, and the error was not harmless. The Nevada Supreme Court's decision affirming Polk's conviction and rejecting his due process claim was contrary to clearly established Supreme Court law. Thus, we reverse and remand to the district court with instructions to grant the writ unless the State elects to retry Polk within a reasonable time.

**REVERSED AND REMANDED.**