# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROGER M. CHAMBERS,
　　　　　　*Petitioner-Appellant,*

v.

E.K. MCDANIEL,
　　　　　　*Respondent-Appellee.*

No. 07-15773

D.C. No.
CV-04-073-RCJ-
VPC

OPINION

Appeal from the United States District Court
for the District of Nevada
Robert C. Jones, District Judge, Presiding

Argued and Submitted
June 10, 2008—San Francisco, California

Filed December 9, 2008

Before: J. Clifford Wallace and Susan P. Graber,
Circuit Judges, and Robert J. Timlin,* District Judge.

Opinion by Judge Timlin;
Dissent by Judge Wallace

*The Honorable Robert J. Timlin, United States District Judge for the Central District of California, sitting by designation.

**COUNSEL**

Linda Marie Bell, Assistant Federal Public Defender, Las Vegas, Nevada, for the petitioner-appellant.

Robert E. Wieland, Senior Deputy Attorney General, Criminal Justice Division, Reno, Nevada, for the respondent-appellee.

---

**OPINION**

TIMLIN, District Judge:

Roger Chambers appeals the district court's denial of his second amended petition for habeas corpus, under 28 U.S.C. § 2254, challenging his conviction for murder in the first degree and his sentence of two consecutive sentences of life without the possibility of parole by a Nevada state trial court. We have jurisdiction pursuant to 28 U.S.C. § 2253. We hold that Chambers' federal constitutional right to due process was violated because the instructions given at his trial permitted the jury to convict him of first-degree murder without a finding of the essential element of deliberation. The error was not harmless. Accordingly, we reverse and remand to the district court to grant the writ unless the State elects to retry Chambers within a reasonable time.

**BACKGROUND**

**A. Factual Background**

In 1994, Chambers was convicted of first degree murder with the use of a deadly weapon by a jury in a Nevada state trial court, and Chambers was sentenced to death.

The charges and conviction arose out of an altercation between Chambers, a chef by profession, and Henry Chacon

on September 28, 1993. Chambers met Chacon while traveling by bus from San Francisco to Reno. While on the bus, Chambers and Chacon became acquainted and ingested alcohol and cocaine together. Upon arriving in Reno, they rented a hotel room to share in the Circus Circus casino and hotel. Chambers and Chacon went to the room together, but Chambers subsequently went downstairs and played poker. When he returned to the room, he found Chacon burning heroin to smoke on Chamber's set of professional chef knives. When Chambers saw this, he became angry, and the two began to fight. According to Chambers, Chacon initially stabbed Chambers with a knife, but Chambers got the knife away from Chacon. A struggle ensued, which resulted in Chacon's death.

The morning after the fight, Chambers went to the Washoe Medical Center. When asked why he was there, Chambers responded, "There's a dead body in the room." He then stated that he did not mean to do it. Hospital staff checked Chambers into the hospital, noting that he appeared to be intoxicated, as he was unsteady and his speech was rapid and disjointed. A nurse administered a breathalyzer test, which showed a blood alcohol level of 0.27.

The police arrived to interview Chambers, who admitted that he had killed someone and that the victim was in the bathtub. Chambers told the police officers how he and Chacon had met, and stated that he had got angry when he saw Chacon cooking heroin on one of the knives he used in his profession. Chambers asserted that Chacon had stabbed him first, and that he wrestled the knife away from Chacon and stabbed him back several times. He repeatedly told the police officers that he stabbed Chacon in self-defense.

Based on Chambers' statement, the police went to Circus Circus where they discovered Chacon's body in the hotel room's bathtub. In the bathroom, they also located a black canvas bag with several pockets holding knives and other

kitchen utensils. Also next to the sink the police found two knives, with sooty deposit on the blades suggesting that they were used to smoke heroin.

Police subsequently took Chambers into custody, and he was transported to the Reno Police Department. Chambers was read his *Miranda* rights, which he waived. A drug recognition expert examined Chambers and concluded that he was under the influence of a central nervous system stimulant. After this determination, the officers questioned Chambers again for four hours, with a video camera recording the interview. After Chambers was booked, blood and urine samples were obtained. The urine sample contained amphetamine, methamphetamine, a trace of morphine, and marijuana metabolites. No narcotics were found in his blood.

At trial, the results of the autopsy of Chacon were presented into evidence. The coroner testified that Chacon had seventeen stab wounds, most of which were superficial. However, two stab wounds were significant: one into the front chest that passed through the lung and the sack covering the heart, and the second in the back that also passed into the chest and into a lung, causing the collapse of the lung.

A jury found Chambers guilty of first-degree murder and also found two aggravating circumstances warranting a death sentence. Chambers was sentenced to death.

## B. Procedural Background

Chambers appealed his conviction to the Nevada Supreme Court, challenging the reasonable doubt jury instruction, the admission of certain evidence, and the court's failure to properly admonish the jury. He also argued that the death penalty was excessive and should be set aside. The Nevada Supreme Court affirmed the conviction, but set aside the death penalty, directing the imposition of a life sentence without the possibility of parole. Following a petition for writ of mandamus by

the State arguing that the appropriate sentence was two life sentences without the possibility of parole, the Nevada Supreme Court granted the writ, and Chambers was resentenced to serve two consecutive life terms without the possibility of parole.

Chambers then filed a petition styled as a "Notice of Appeal; Writ of Habeas Corpus/Post-Conviction Petition" in the Nevada state trial court. The court dismissed the petition, but upon appeal the Nevada Supreme Court reversed the dismissal, finding that the trial court improperly construed this document as a habeas corpus petition, when it was simply a notice of Chambers' future intent to file a habeas petition.

During this time, Chambers filed in the state trial court a habeas corpus petition asserting sixteen detailed claims for relief. After the court appointed counsel to proceed with the petition, an additional claim was added to the petition. The state trial court denied the petition on April 18, 2000. Chambers appealed, and the Nevada Supreme Court affirmed the denial of Chambers' petition on July 12, 2001.

On July 27, 2001, Chambers filed a habeas corpus petition in federal district court. After the Federal Public Defender was appointed, Chambers filed a first amended petition alleging ten grounds for relief. The government filed a motion to dismiss, contending that Chambers had failed to exhaust his state court remedies as to five grounds for relief asserted by Chambers. The district court granted the motion to dismiss in part, finding four grounds for relief had not been exhausted, including Ground One of the Petition challenging the state court's jury instruction on premeditation and deliberation as a violation of his constitutional right to due process.

In its Order, the federal district court gave Chambers the option of abandoning the unexhausted grounds and proceeding on those which remained, or voluntarily dismissing the entire petition to return to state court to exhaust his state rem-

edies for the unexhausted grounds for relief. Chambers chose to return to state court, and on November 3, 2003, the district court ordered the case dismissed without prejudice and stated that Chambers could return to the district court and move to reopen the action once he had exhausted his state court remedies with respect to the unexhausted claims.

On November 12, 2003, Chambers filed a Petition for Extraordinary Writ with the Nevada Supreme Court, alleging the four unexhausted grounds for relief. On December 3, 2003, the Nevada Supreme Court denied the petition, stating that "[w]e have considered the petition on file herein, and we are not satisfied that this court's intervention by way of extraordinary relief is warranted at this time."

After Chambers' case was reopened in federal district court, Chambers refiled his second amended habeas petition ("petition") on March 22, 2004. The State filed a motion to dismiss arguing that Chambers had failed to properly exhaust his state remedies when he filed the Petition for Extraordinary Writ in Nevada Supreme Court, and the district court denied that motion.

On December 13, 2006, after the State had answered Chambers' petition, the district court denied the petition. Chambers filed this timely appeal.

## EXHAUSTION

The State first argues that Chambers' constitutional due process claim concerning the jury instruction on premeditation given at his trial is not properly brought to federal court because Chambers failed to exhaust his state remedies as to that claim. We review de novo whether a petitioner has exhausted state remedies. *Greene v. Lambert*, 288 F.3d 1081, 1086 (9th Cir. 2002).

[1] A state prisoner must exhaust a federal constitutional claim in state court before a federal court may consider a

claim. 28 U.S.C. § 2254(b)(1)(A), (c). The exhaustion requirement, first enunciated in *Ex parte Royall*, 117 U.S. 241 (1886), and subsequently codified in 28 U.S.C. § 2254, is "grounded in principles of comity and reflects a desire to 'protect the state courts' role in the enforcement of federal law.' " *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)). Pursuant to § 2254(c), exhaustion typically requires that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). However, "exhaustion does not require repeated assertions if a federal claim is actually considered at least once on the merits by the highest state court." *Greene*, 288 F.3d at 1086 (citing *Castille*, 489 U.S. at 350).

Here, Chambers did not invoke one complete round of Nevada's "established appellate review process" with regard to his due process claim concerning the premeditation jury instruction. He did raise the issue in his original habeas corpus petition filed in state trial court but, as the district court correctly found, he failed to identify the federal nature of the claim when he appealed the lower court's decision of denial to the Nevada Supreme Court.

[2] Subsequently, however, Chambers did raise his constitutional due process claim concerning the premeditation jury instruction in a Petition for Extraordinary Writ filed with the Nevada Supreme Court on November 12, 2003. Therefore, because Chambers did in fact bring his claim to the attention of the highest state court, "[o]ur decision hinges on what happened to his [writ]. If the [Nevada] Supreme Court declined to apply the procedural bar that was available to it and adjudicated the claim on the merits, then the claim may proceed." *Greene*, 288 F.3d at 1086 (citing *Castille*, 489 U.S. at 351, as recognizing exception where the state has actually passed on the claim).

The Nevada Supreme Court decided Chambers' Petition for an Extraordinary Writ when it denied the petition. The court's order is brief, stating simply: "This is a proper petition for an extraordinary writ. Petitioner challenges the validity of his judgment of conviction and sentence. We have considered the petition on file herein, and we are not satisfied that this court's intervention by way of extraordinary relief is warranted at this time. Accordingly, we order the petition denied." A footnote to the order elaborates on the Nevada Supreme Court's rationale: "We have considered *all* proper person documents filed or received in this matter, and we conclude that the relief requested is not warranted." (emphasis added).

Article VI, section 4 of the Nevada Constitutions grants the Nevada Supreme Court original jurisdiction to issue writs. *See* Nev. Const. Art. VI, § 4 ("The [Nevada Supreme Court] shall also have power to issue writs of mandamus . . . and habeas corpus and also all writs necessary or proper to the complete exercise of its appellate jurisdiction."); *see Blair v. Crawford*, 275 F.3d 1156, 1158 (9th Cir. 2002). The Nevada Supreme Court issues writ relief only "at the discretion of th[e] court," and the petitioner carries the burden of demonstrating that extraordinary relief is warranted. *See State v. Eighth Judicial Dist. Court,* 42 P.3d 233, 237 (Nev. 2002) (per curiam); *Pan v. Eighth Judicial Dist. Court*, 88 P.3d 840, 844 (Nev. 2004) (per curiam). Because Chambers' federal claim regarding the premeditation jury instruction was raised for the first time in this discretionary context, the Nevada Supreme Court would have been within its discretion to dismiss the petition on the procedural grounds that it should have been filed in the district court or to deny it without comment.

Had the Nevada Supreme Court denied the petition without opinion, that denial would have brought Chambers' claim within the reach of the Supreme Court's holding in *Castille,* 489 U.S. at 351, that exhaustion is not satisfied "where the claim has been presented for the first and only time in a pro-

cedural context in which its merits will not be considered unless there are special and important reasons therefor." (Internal quotation marks omitted); *see also Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004). However, *Castille* does not address the question presented here, as *Castille* involved only a state court's rejection without comment of a new claim in an extraordinary motion and does not tell us what to do when a court has in fact spoken on the issue.

**[3]** Here, the Nevada Supreme Court did not deny without comment or opinion. Instead, the court issued an order stating that it had "considered the petition on file" and that its intervention "by way of extraordinary relief" was not warranted at this time. Importantly, the court reiterated in the footnote that it "had considered" all the documents filed and received in the matter, and that it "concluded that the relief requested is not warranted." Pursuant to our reasoning in *Greene*, we must therefore decide if the Nevada Supreme Court reached the merits of Chambers' claim or decided the petition on procedural grounds only. Whether Chambers' due process claim is exhausted turns on the outcome of this inquiry.

**[4]** A fair and plausible reading of the Nevada Supreme Court's order of denial is that the court considered the merits of Chambers' claim, but was not persuaded as to its validity. The court did not state that it would not consider the claim, but rather that it would not "intervene." In fact, in the footnote, the court explicitly stated that it had considered all the documents filed with the court, and that it had reached the conclusion that relief was not warranted. The most logical reading of this sparse text is that the court considered the arguments of the parties and the documentation filed by them and came to a conclusion about their merits. For a court to consider all the materials filed in conjunction with a petition for a writ and to then "conclude" that relief is not warranted strongly suggests that such a "conclusion" is on the merits. This order "cannot be fairly characterized as merely procedural. The court understood the nature of the claim and took

pains to respond to it, albeit curtly and ambiguously." *Greene*, 288 F.3d at 1087.

Even if this order is curt and ambiguous, we have previously addressed how to resolve an ambiguity of this kind. *See id.*; *see Harris v. Superior Court,* 500 F.2d 1124, 1128-29 (9th Cir. 1974) (en banc). As further elucidated in our opinion in *Greene*, the reasoning in *Harris* guides the resolution of such ambiguity:

> *Harris* involved a so-called "postcard denial" from the California Supreme Court. We held in that case that the state court's denial of a habeas petition on procedural grounds did not exhaust state remedies, but (citing *Brown*, 344 U.S. at 449 n.3, 73 S.Ct. 397) that the state court's denial of a habeas petition on the merits did exhaust state remedies. *Harris*, 500 F.2d at 1128-29. We construed a bare postcard denial from the California Supreme Court as a decision on the merits, for purposes of the exhaustion requirement, *unless that court expressly relied on a procedural bar. Id. In other words, although the state supreme court's response was ambiguous, we adopted a plausible construction that it acted on the merits of a claim presented to it.* We have not overruled *Harris*.

*Greene*, 288 F.3d at 1087 (emphasis added; footnote omitted); *see also Hunter v. Aispuro*, 982 F.2d 344, 347-48 & n.2 (9th Cir. 1992).

**[5]** Therefore, unless a court expressly (not implicitly) states that it is relying upon a procedural bar, we must construe an ambiguous state court response as acting on the merits of a claim, if such a construction is plausible. A comparison of the language in *Harris* — which was found to be a decision on the merits by the California Supreme Court — to the language used by the Nevada Supreme Court in the

instant case is instructive. In *Harris,* the "postcard denial" found to be a decision on the merits merely stated "Petition for Writ of Habeas Corpus denied." We noted in *Harris* that, in cases where the California Supreme Court relied upon procedural deficiencies as a basis for denying the petition, the court often included after the language of denial a "citation of an authority which indicates that the petition was procedurally deficient." 500 F.2d at 1128. However, where the California Supreme Court includes no citation and simply states that the petition is denied, that absence of a citation coupled with the cursory statement denying the petition satisfies the exhaustion requirement.

**[6]** In this case, even more than in *Harris,* it is appropriate to construe the state court's order of denial as having been made on the merits. The Nevada Supreme Court here did more than issue a postcard denial. It stated in its order that it had "considered" all the materials filed by the parties, which indicates that it not only read the materials, but ruminated as to their merits. Then, the court stated it had "concluded" that intervention was not necessary. A conclusion that intervention is not necessary based on a consideration of all the documents filed is not a decision based on a procedural irregularity, but rather a decision on the merits.

The Ninth Circuit's analysis of another order denying a petition for a writ of habeas corpus by the Nevada Supreme Court is also instructive in construing the instant order. In *Alexander v. Fogliani*, 375 F.2d 733, 735 (9th Cir. 1967), the Ninth Circuit found a denial of a writ of habeas corpus petition filed directly with the Nevada Supreme Court to be "clearly on the merits" and therefore also held that the petitioner had exhausted his state court remedies based on the following language by the Nevada Supreme Court: "The court has read the petition for release on habeas corpus and finds from the face of the petition and attached documents that petitioner's present confinement is in all respects legal. Therefore, it is ordered that the petition for habeas corpus be and the

same and is denied." Two similarities exist in the Nevada Supreme Court's orders in the instant case and in *Alexander*: 1) in both, the court acknowledges that it has read and considered the petition and all the other materials filed by the parties, and 2) after such consideration, the courts find that relief is not warranted based on the petitioner's arguments. Again, both orders may be ambiguous, but pursuant to *Harris*, we must ascertain whether a plausible construction exists that these were decisions on the merits. In both cases, they do. *See also Blair v. Crawford*, 275 F.3d 1156, 1158 (9th Cir. 2002) (holding, in the context of a discussion about AEDPA statute of limitations, that a Nevada Supreme Court's use of similar language as in the instant case indicated that the court "construed and denied Blair's petition").

Finally, the language used by the Nevada Supreme Court in other cases involving petitions for extraordinary writs is illuminating. In *Hosier v. State*, 117 P.3d 212, 213 (Nev. 2005) (per curiam), a decision filed two years after Chambers' petition for an extraordinary writ was denied, the Nevada Supreme Court held that "[a]lthough this court retains original jurisdiction to issue writs, this court will not exercise its original jurisdiction to consider a writ petition in a criminal case raising claims that could or should have been raised in an appeal or in an appropriate post-conviction proceeding in the district court." The court then concludes: "we decline to exercise this court's original jurisdiction to consider this original petition challenging the validity of the judgment of conviction." *Id.* What is clear from *Hosier* is that the Nevada Supreme Court is capable of clearly and unambiguously denying a petition for an extraordinary writ on procedural grounds and that, when it does so, the court will state that it "decline[s] to exercise its original jurisdiction to consider" the petition.

Here, the Nevada Supreme Court did not "decline to exercise its original jurisdiction to consider the petition." Rather, unlike in *Hosier,* the Nevada Supreme Court stated that it did in fact consider the petition and all other filed documents and

that it reached a conclusion based on that consideration. The contrast makes clear that the denial order in this case should be construed as a decision on the merits.

Further, *Hosier*'s discussion of policy reasons for denying the petition in that case on procedural grounds rather than ruling on the merits actually weighs in favor of construing the Nevada Supreme Court's order here as on the merits. The Nevada Supreme Court points out in *Hosier* that "[o]riginal petitions are not accompanied by a complete record on appeal. Thus, this court's ability to review claims challenging the judgment of conviction is seriously limited." *Id.* at 213. Further, the Nevada Supreme Court's appellate jurisdiction is limited to questions of law alone, and its "consideration of many petitions of this type would require this court to exceed its appellate jurisdiction because the claims presented often require evidentiary and factual determination." *Id.*

Here, the question presented in this petition, whether the premeditation jury instruction given at Chambers' trial violated his due process rights, is one of law. No factual determinations are necessary. Furthermore, the Nevada Supreme Court had all the materials it would have needed to consider this constitutional claim and reach a conclusion on the merits, as Chambers included the jury instruction at issue in the case. Therefore, the reasons that *Hosier* offers for declining to reach the merits of these petitions are not in play here.

**[7]** In summary, we conclude that the Nevada Supreme Court's order denying Chambers' petition for extraordinary writ was made on the merits and that such denial satisfied the exhaustion requirement.

## DUE PROCESS CLAIM

**[8]** On the merits, Chambers contends that the state court's rejection of his due process argument about the jury instruction on premeditation given at his trial "resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In *Polk v. Sandoval*, 503 F.3d 903, 911 (9th Cir. 2007), we held that the same jury instruction on premeditation at issue here was constitutionally defective, and the Nevada court's failure to correct the error "was contrary to clearly established federal law, as determined by the Supreme Court." As the parties acknowledge, we are bound by *Polk*.[1] *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003)(en banc)(holding that, unless a case is overruled or becomes clearly irreconcilable with a Supreme Court holding, a three-judge panel is bound by the decisions of previous three-judge panels).

**[9]** As we did in *Polk*, we look here at "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process . . . [T]he instruction . . . must be considered in the context of the instructions as a whole and the trial record." *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citations and internal quotation marks omitted). Other instructions given at Chambers' trial compounded the error. For example, Instruction No. 26 provided that "[t]he nature and extent of the injuries, coupled with repeated blows, may constitute evidence of willfulness, premeditation, and deliberation." In this instruction, the three separate elements are collapsed into one. Instruction No. 22 further confuses the issue, when it defines second-degree murder as "all other kinds of murder" and contains no discussion of the lesser intent requirement for second-degree murder.

**[10]** Finally, just as in *Polk,* the State exacerbated the problem in its closing rebuttal argument by emphasizing the premeditation instruction, as support for its argument that the jury should find first-degree murder: "Premeditation can be successive, instantaneous thoughts of the mind. Doesn't

---

[1]We therefore do not address Respondent's arguments that "*Polk* was erroneously decided."

require it to be planned. Premeditation is pulling the knife, lifting your arm, and stabbing. Instantaneous thoughts of the mind to control movement. That's all you need for premeditation. You read the law. That's what it tells you."

[11] The State argues that the second-degree murder and manslaughter instructions given in this case specified the correct definitions and therefore the jury would have relied on those to clear up any confusion created by the instruction on premeditation. It belies common sense, however, to believe that a jury could have ascertained the correct standard for first-degree murder from a jury instruction for second-degree murder, when the actual instruction for first-degree murder is defective. Moreover, a review of the jury instructions shows that the jury was never instructed as to what the elements of second-degree murder were, but only defined it as "all other kinds of murder." Such an instruction would not assist the jury in ascertaining what the different levels of intent were for first- and second-degree murder. Therefore, we find that the instruction infected the entire trial so that the conviction of Chambers violated due process.

[12] Our inquiry does not end here. Even though a constitutional error occurred, Chambers is not entitled to relief unless he can show that "the error had substantial and injurious effect or influence in determining the jury's verdict."[2] *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). "If we are in grave doubt as to whether the error had such an effect, the petitioner is entitled to the writ." *Coleman v. Calderon*, 210 F.3d 1047, 1051 (9th Cir. 2000). The entire case here focused on Chambers' state of mind when he got into an altercation with Chacon and stabbed him seventeen times. The fact that Chambers

---

[2]We are aware that the Supreme Court has granted certiorari in a recent Ninth Circuit case concerning instructional error, *Pulido v. Chrones*, 487 F.3d 669 (9th Cir. 2007), *cert. granted*, 128 S.Ct. 1444 (2008). However, we do not believe that the outcome of *Pulido* would affect the analysis of instructional error in Chambers' case.

had killed Chacon by stabbing him was not an issue; instead, Chambers was arguing that he acted in self-defense, while the State was arguing that there was sufficient evidence to show premeditation. The prosecutor emphasized the instruction in its closing argument to demonstrate premeditation. Therefore, the error here did not affect a minor issue at trial, but rather went to the very heart of the case.

[13] Further, "[t]he evidence against [Chambers] was not so great that it precluded a verdict of second-degree murder. The State's evidence on deliberation was particularly weak." *Polk*, 503 F.3d at 912. The State cites three pieces of evidence to support the finding of premeditation: that Chambers stabbed Chacon seventeen times; that the wounds penetrated three inches into the body and were located in two separate clusters of wounds; and that Chambers was not mentally disturbed, but at the most merely drunk. However, this evidence does not demonstrate the key feature of the element of deliberation: that of a "dispassionate weighing process and consideration of consequences before acting." *Byford*, 994 P.2d at 714. Although "[a] deliberate determination may be arrived at in a short period of time, . . . the determination must not be formed in passion, or if formed in passion, it must be carried out after there has been time for the passion to subside and deliberation to occur." *Id.*

[14] If anything, the evidence presented at trial seems to weigh in favor of second-degree murder committed while in the throes of a heated argument. The Nevada Supreme Court's summary of the facts in Chambers' trial amply demonstrates the weak state of the evidence of deliberation: "Chambers murdered the victim in a drunken state, which indicated no advanced planning, during an emotionally charged confrontation in which Chambers was wounded and his professional tools were being ruined." *Dennis v. State*, 13 P.3d 434, 441 (Nev. 2000). In light of the weak evidence of deliberation, we simply cannot conclude that the instructional error was harmless. "Since we are left 'in grave doubt' about whether the

jury would have found deliberation on [Chambers'] part if it had been properly instructed, we conclude that the error had a substantial and injurious effect or influence on the jury's verdict." *Polk*, 503 F.3d at 913.

## CONCLUSION

Chambers' federal constitutional due process right was violated by the instructions given by the trial court at his murder trial, as they permitted the jury to convict him of first-degree murder without finding separately all three elements of that crime: willfulness, deliberation, and premeditation. The error was not harmless. The Nevada Supreme Court's decision denying Chambers' petition for an extraordinary writ and rejecting his due process claim was contrary to clearly established federal law. Thus, we reverse and remand to the district court with instructions to grant the writ of habeas corpus and order the State of Nevada to release Chambers, unless the State elects to retry Chambers within a reasonable amount of time.[3]

## REVERSED AND REMANDED.

WALLACE, Circuit Judge, dissenting:

I respectfully dissent from the majority's conclusion that Chambers exhausted his state court remedies. Therefore, I would deny Chambers' petition for writ of habeas corpus and would remand to the district court to direct the petitioner to file his claims in the Nevada state courts.

The majority correctly sets forth that, pursuant to 28 U.S.C.

---

[3]Chambers raised other issues on appeal. In light of our decision to reverse based on the due process violation, we decline to reach those issues.

§ 2254(b)(1), a state prisoner must exhaust remedies available in state courts before a federal court may consider a claim. Exhaustion typically requires that "state prisoners . . . give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The exhaustion doctrine is satisfied "[i]f a petitioner presents his claim to the highest state court and that court disposes of the claim on the merits." *Hayes v. Kincheloe*, 784 F.2d 1434, 1437 (9th Cir. 1986). In this case, neither exhaustion requirement was satisfied.

First, Chambers did not fairly present his habeas claim challenging the jury instruction on premeditation and deliberation to the Nevada Supreme Court. As we summarized in *Roettgen v. Copeland*, "submitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation." 33 F.3d 36, 38 (9th Cir. 1994). Here, Chambers raised his jury instructions claim for the first time in state court in a petition for extraordinary writ to the Nevada Supreme Court. Extraordinary writs are a form of discretionary relief, and only granted in special circumstances. *See Gumm v. Nev. Dep't of Educ.*, 113 P.3d 853, 856 (Nev. 2005) ("[An] extraordinary writ will issue only when the right to the relief requested is clear and the petitioners have no plain, speedy and adequate remedy in the ordinary course of law"). Thus, Chambers did not fairly present his habeas claim to the state's highest court.

Second, the Nevada Supreme Court's order denying Chambers' petition for extraordinary writ did not dispose of his jury instructions claim on the merits. As described above, the Nevada Supreme Court may exercise its discretion to issue extraordinary writs only where the petitioner has "no plain, speedy and adequate remedy in the ordinary course of law." *Id.* In this case, Chambers had a plain, speedy and adequate remedy: to follow the statutory procedures of filing an

amended writ of habeas corpus, stating federal constitutional claims, in the state trial court, and then appealing any denial to the Nevada Supreme Court. The Nevada Supreme Court was thus not required to consider the merits of Chambers' claim. Indeed, it would be surprising if the court had considered the merits, given that the traditional method of filing a writ of habeas corpus provided adequate relief. Thus, not surprisingly, the language of the order denying the petition for extraordinary writ does not state that the Nevada Supreme Court considered the merits of Chambers' jury instruction claim.

This, of course, is where I part with the majority. No words in the order suggest that the Nevada Supreme Court decided the case on the merits; in fact, some language in the order suggests the opposite. Certainly the statement that the court "considered the petition" does not indicate that the court declined to issue the extraordinary writ on the merits of the constitutional claims. It is fair to assume that the Nevada Supreme Court carries out its judicial duty and considers each petition that comes before it. That is, the court reads the petition and evaluates whether it should exercise its discretion to issue the writ in cases where petitioners have no "plain, speedy and adequate remedy in the ordinary course of law." Clearly, the words "considered the petition" alone do not indicate that the court evaluated the merits of petitioner's claim.

Similarly, the majority construes the court's use of the word "conclude" in its statement that extraordinary relief was not warranted as strongly suggesting that the court made its conclusion on the merits. That is too great of a jump for me. A more plausible reading is that the Nevada Supreme Court concluded that extraordinary relief was not warranted because petitioner could file an amended petition for writ of habeas corpus and follow traditional appellate procedures to bring the merits of the claim before the court. The language of the order supports this view. The order reads "we are not satisfied that this court's intervention by way of extraordinary relief is war-

ranted *at this time*." (emphasis added). Is not this the key? The court's statement that intervention was not "warranted at [that] time" leaves open the possibility that the court could grant relief at a later time, for example, after an appeal of a denial of a writ of habeas corpus from the state trial court. If the court had decided to deny the writ on the merits, there would be no reason to leave open the option of relief on those merits at a future date.

The majority acknowledges that had the Nevada Supreme Court denied the petition without opinion, *Castille v. Peoples* would control and the claims presented for the first time to the Nevada Supreme Court would not be exhausted. 489 U.S. 346, 351 (1989). The only distinction between the instant case and *Castille* is the Nevada Supreme Court's statement that "[w]e have considered the petition . . . , and we are not satisfied that this court's intervention by way of extraordinary relief is warranted at this time," along with a footnote indicating that the court had considered all the documents filed.

Relying on *Greene v. Lambert*, the majority construes the Nevada Supreme Court's cursory statement as a decision on the merits of Chambers' claim, even though the circumstances of *Greene* differ significantly from those of the instant case. 288 F.3d 1081, 1086-88 (9th Cir. 2002). In *Greene*, the Washington Supreme Court amended its opinion denying a petitioner's state habeas petition to address a federal constitutional claim raised for the first time in a motion to reconsider. *Id*. at 1085. In the amended opinion, the Washington Supreme Court stated that it did not have to reach the issue raised because it could decide the case on narrower grounds. *Id*. We recognized that "the Washington Supreme Court would have been within its discretion simply to deny the motion or to dismiss it without comment," instead of amending the opinion to address the motion. *Id*. at 1087. Consequently, we were free to engage in analyzing the "cryptic" amendment to the opinion and conclude that the state court's decision was made on the merits. *Id*. We were ultimately per-

suaded that the exhaustion requirement had been met because the state court's decision could not "be fairly characterized as merely procedural. The court understood the nature of the claim and took pains to respond to it, albeit curtly and ambiguously." *Id.*

Unlike *Greene*, the Nevada Supreme Court in this case did no more than to deny the petition and to issue a summary statement regarding the denial. There is no fair way to construe the state court's decision as having been made on the merits. The most natural characterization of the Nevada Supreme Court's dismissal of the claim is that it did so on procedural grounds, given that the court explicitly held that the situation did not warrant intervention by way of extraordinary relief. Additionally, nothing in the court's decision gives any indication of the "nature of the claim," and the court's decision does not suggest that the court "took pains to respond to [the claim]." *Id.* The court merely issued a short statement denying the petition.

The majority relies on the rule in *Harris v. Superior Court* that unless a court expressly states that it is relying upon a procedural bar, ambiguous responses should be construed to mean that the court acted on the merits of a claim, if such a construction is possible. 500 F.2d 1124, 1128-29 (1974). But a critical distinction between *Harris* and the instant case is apparent: *Harris* was an appeal from a denial of a writ of habeas corpus; this case is an appeal from a denial of an extraordinary writ. As explained above, the Nevada Supreme Court is not even permitted to exercise its discretion to issue an extraordinary writ except in special circumstances, as where there is no other speedy and adequate relief. The rule announced in *Harris* thus does not apply to this case.

Similar reasoning distinguishes *Alexander v. Fogliani*, 375 F.2d 733, 735 (9th Cir. 1967). As in *Harris*, the habeas claim in *Alexander* came to this court as an appeal from a denial of a writ of habeas corpus, and not a denial of extraordinary

relief. *Id.* Moreover, the language of the Nevada Supreme Court's denial of relief in *Alexander* clearly evinced a disposition on the merits. As the majority recounts, the Nevada Supreme Court's order in that case stated that "the petitioner's present confinement is in all respects legal." *Id.* No such discussion of the merits is present in the order denying the extraordinary writ in this case.

Finally, the majority cites *Hosier v. State* for the proposition that the Nevada Supreme Court is "capable of clearly and unambiguously denying a petition for an extraordinary writ on procedural grounds," and that the ambiguous language in this case must therefore be construed as a disposition on the merits. 117 P.3d 212, 213 (Nev. 2005) (per curiam). But the Nevada Supreme Court is equally capable of clearly and unambiguously indicating that is denial of an extraordinary writ petition is on the merits. In *Hickey v. Eighth Judicial District Court*, the court explicitly stated that it would "exercise [its] discretion to entertain the merits of the petition," and then proceeded to deny the petition. 782 P.2d 1336, 1338 (Nev. 1989). Why then should we construe the ambiguity in this case as a merits denial, as the majority advocates? We should not. Given that extraordinary writs are issued only in special circumstances, I believe the most logical interpretation of the Nevada Supreme Court's curt order is a denial on procedural, rather than substantive grounds.

While the history of Chambers' appeals process has been long and complex, the federal court should not shortchange the state's opportunity to evaluate all claims on their merits. We do not respect the state court system when we construe an order denying an extraordinary writ (where the court is only expected to review cases on the merits where extraordinary relief is necessary) as being a decision on the merits. The Nevada court system must have the full opportunity to address the merits of Chambers' federal constitutional claims, and the order denying the extraordinary writ does not indicate that the Nevada Supreme Court has done so. There is, of

course, a virtue in bringing litigation to a conclusion as soon as reasonably possible. But our system of federalism requires that state courts rule on the merits first — especially when a state crime involving a state-convicted criminal defendant is challenged in a habeas corpus proceeding. Therefore, I respectfully dissent.