After a jury trial, the defendant, Ryan Duntin, was convicted of two counts of trafficking persons for sexual servitude, see G. L. c. 265, § 50(a )(ii), and two counts of deriving support from prostitution, G. L. c. 272, § 7.[2] On appeal the defendant contends that (1) the deriving support convictions are lesser included offenses of the trafficking convictions; (2) the judge erred when he did not give the jury a separate acts instruction regarding the trafficking and deriving support charges; (3) the second set of trafficking, deriving support, and conspiracy convictions should have been dismissed as duplicative; and (4) the judge erred when he did not grant the defendant's request for a mistrial. We affirm.
1. Lesser included offenses. In Commonwealth v. McGhee, 472 Mass. 405, 416-417 (2015), the Supreme Judicial Court held that G. L. c. 272, § 7, is not a lesser included offense of trafficking for sexual servitude under G. L. c. 265, § 50(a )(i). For the first time in his reply brief, the defendant argues that McGhee leaves open the question whether G. L. c. 272, § 7 (deriving support), is a lesser included offense of G. L. c. 265, § 50(a )(ii), which prohibits receiving a financial benefit or other thing of value as a result of trafficking in violation of § 50(a )(i).[3] An argument raised for the first time in a reply brief is waived. See Commonwealth v. Stewart, 460 Mass. 817, 831 (2011). Nevertheless, as discussed below, we have reviewed the claim and determined it to be without merit.
In McGhee, the court stated two primary reasons why G. L. c. 272, § 7, was not a lesser included offense of G. L. c. 265, § 50(a )(i) :
"First, the language of G. L. c. 272, § 7, plainly states that the conduct prohibited by that statute is the sharing of proceeds earned by a known prostitute. In contrast, under G. L. c. 265, § 50 (a ), an individual who knowingly enables or causes another person to engage in commercial sexual activity need not benefit, either financially or by receiving something of value, from such conduct in order to be convicted of sex trafficking.... Second, the knowledge element of G. L. c. 272, § 7, is retrospective. That is to say, an individual shares earnings or proceeds knowing that they came from an act of prostitution that already has occurred. In contrast, the knowledge element of G. L. c. 265, § 50 (a ), is prospective. An individual engages in statutorily enumerated acts knowing that those acts will result in another person's anticipated engagement in commercial sexual activity."
McGhee, supra at 416-417.
In an indictment under G. L. c. 265, § 50(a )(ii), one element of the offense is that the defendant obtained a financial benefit or received anything of value. In this respect a trafficking offense charged under § 50(a )(ii) and a deriving support claim under G. L. c. 272, § 7, share a common element. However, G. L. c. 265, § 50(a )(ii), incorporates a violation of G. L. c. 265, § 50(a )(i), and therefore incorporates the knowledge element of § 50(a )(i) into § 50(a )(ii). The knowledge element of the crime of trafficking under § 50(a )(ii) is prospective, while the knowledge element of the crime of deriving support under G. L. c. 272, § 7, is retrospective. McGhee, supra at 417. Each crime contains an element that the other does not, and therefore G. L. c. 272, § 7, is not a lesser included offense of G. L. c. 265, § 50(a )(ii). See Commonwealth v. Vick, 454 Mass. 418, 431 (2009).
2. Separate acts instruction. The defendant contends for the first time on appeal[4] that the deriving support convictions should have been dismissed because the judge erred in not giving a separate acts instruction. In support of his argument, the defendant relies on Commonwealth v. Niels N., 73 Mass. App. Ct. 689, 698 (2009), which states that "[w]here offenses are so closely related in fact that they in substance constitute a single crime, the jury are to be instructed that convictions on those offenses must rest on separate and distinct acts."
The defendant's reliance on Niels N. is misplaced. For the reasons stated above, the trafficking and deriving support crimes each contain elements not present in the other and thus, the same evidence can support convictions for both crimes. The majority opinion in Niels N. was rejected in Vick, supra, and has no application here.
The defendant was charged with two counts of trafficking and two counts of deriving support, however, and to that extent "[t]he question whether two offenses are 'so closely related in fact as to constitute in substance but a single crime,' becomes pertinent ... [because] there are multiple counts of the same offense." Vick, supra at 435, quoting from Commonwealth v. St. Pierre, 377 Mass. 650, 662 (1979). "In those circumstances, multiple convictions and sentences are permissible only where each conviction is premised on a distinct criminal act...." Vick, supra.
"Whether a defendant's actions constitute separate and distinct acts or must be considered a single crime is a question of fact for the jury to resolve." Id. at 435 n.16. Here, the judge instructed the jury:
"The human trafficking and the deriving support counts are alleged to have occurred in two different towns. There's a separate count alleged for Braintree, a separate count alleged for Tewksbury. We're going to have clipped to the verdict slip the particular count. That will tell you whether that's the count that relates to Tewksbury or to Braintree."
The instruction was clear. The factual question whether the defendant committed multiple counts of each offense-"in two different towns"-was squarely before the jury. There was no error.
3. Duplicative convictions. The defendant submits that the conduct charged constituted a single, continuing offense, and that the resulting multiple convictions were duplicative. The evidence showed that the defendant sexually exploited the victim in various locations, including two different hotels, in two different counties,[5] over the course of a number of days.[6] None of the offenses were necessary or incidental to the others. See Commonwealth v. Suero, 465 Mass. 215, 221 & n.6 (2013). The convictions were not duplicative. Ibid.
4. Mistrial. The defendant contends that the judge abused his discretion in denying the defendant's motion for a mistrial. He claims that the jury's exposure to comments made by a juror tainted the jury's deliberations.
During deliberations, the judge received notes from juror number five (juror 5) and juror number thirteen (juror 13), requesting to be made alternates. The judge initially questioned juror 13, who told him that she lived in Randolph, that she was not comfortable sitting on the jury, but that she had never seen the defendant's family before. The trial judge asked: "[D]id you have any conversation with [juror 5] about anything regarding her living in Randolph or the case?" Juror 13 responded: "No. She just was sharing what-you know, fears. I said, well, I live in Randolph, too. That was it." The judge proceeded to question juror 5, who reported that she asked to be an alternate because she lived in Randolph, as did the defendant's family, and that she had recognized some of the defendant's family members as people that she had seen "around town." She also expressed concern about her family's safety, but denied saying anything about the defendant's family in the jury room. After questioning juror 5, the judge denied the defendant's motion for a mistrial and dismissed juror 5 over the defendant's objection.
The judge continued to question juror 13 about her conversation with juror 5. The judge asked juror 13 if juror 5 expressed any fears to the entire group. Juror 13 stated: "It was just-I'm just close-I was close to her. I don't know if anybody heard." After conferring with counsel about whether to dismiss juror 13, the judge-at the defendant's request-once again inquired about what juror 5 said to juror 13. The judge asked: "[D]o you remember exactly what she said to you?" In response juror 13 stated: "Word for word, no. It's just that she thought she saw the-some of the people that were in court in Randolph.... Some people that were in court here-... that were in Randolph.... That's it." After thoroughly questioning juror 13, the judge denied the Commonwealth's request to dismiss juror 13, assigned an alternate to replace juror 5, and instructed the jury to begin their deliberations anew.[7] The defendant declared himself satisfied with juror 13.
The defendant did not renew his request for a mistrial after the judge determined that juror 13 could serve on the jury. Furthermore, the defendant did not ask the judge to question the remaining jurors about their exposure to comments made by juror 5.[8] In fact, defense counsel stated that the defendant "expressed his concerns that if there was some conversation about family members and then jurors are let go one by one, he feels as though that's going to look disfavorable [sic ] upon him."
The judge did not abuse his discretion in denying a mistrial. He questioned jurors 5 and 13 repeatedly at the defendant's request and removed juror 5. See Commonwealth v. Kamara, 422 Mass. 614, 616-617 (1996) ; Commonwealth v. Tennison, 440 Mass. 553, 558 (2003). The defendant raised no objection to juror 13, and the judge's disposition with respect to juror 13 was consistent with the defendant's expressed concern that further questioning was undesirable.
In order to establish grounds for a mistrial, the defendant was required to make a "colorable showing" that some word or deed may have had an impact on the remaining jurors that rose above the level of mere speculation. Commonwealth v. Dixon, 395 Mass. 149, 151-152 (1985). See Commonwealth v. Rivera, 464 Mass. 56, 81 (2013). We accord substantial deference to the trial judge in these matters, as he was "in the best position to evaluate all the circumstances of the exposure to the extraneous matter, and its actual prejudicial effect." Commonwealth v. Hardy, 431 Mass. 387, 392 (2000). The defendant failed to meet his burden to demonstrate that the remaining jurors were in fact exposed to extraneous material. See Commonwealth v. Cordle, 412 Mass. 172, 180 (1992). The judge thoroughly examined juror 5 and juror 13. Juror 5 denied saying anything about the defendant's family or fear for her safety in the jury room. Juror 13 claimed that juror 5 said she "thought she saw the-some of the people that were in court in Randolph," but said that juror 5 was sitting "close to her" and did not know "if anybody heard." Nothing in this statement suggest that any other juror overheard the conversation or would be swayed by it even if overheard. In addition, the judge once again instructed the entire jury that they were to "begin their deliberations anew on the merits of the case." "We presume that the jury followed the instruction." Commonwealth v. Shruhan, 89 Mass. App. Ct. 320, 326 (2016). The judge did not abuse his considerable discretion.
Judgments affirmed.

At a subsequent plea hearing, the defendant pleaded guilty to two counts of conspiracy to traffic persons for sexual servitude, G. L. c. 274, § 7, and one count of failure to register as a sex offender, G. L. c. 6, § 178H.

General Laws c. 265, § 50(a ), inserted by St. 2011, c. 178, § 23, provides in pertinent part:
"Whoever knowingly: (i) subjects, or attempts to subject, or recruits, entices, harbors, transports, provides or obtains by any means, or attempts to recruit, entice, harbor, transport, provide or obtain by any means, another person to engage in commercial sexual activity, a sexually-explicit performance or the production of unlawful pornography in violation of chapter 272, or causes a person to engage in commercial sexual activity, a sexually-explicit performance or the production of unlawful pornography in violation of said chapter 272; or (ii) benefits, financially or by receiving anything of value, as a result of a violation of clause (i), shall be guilty of the crime of trafficking of persons for sexual servitude...."

We review an unpreserved claim of error in the judge's jury instructions to determine if there was an error, and if so, whether that error caused a substantial risk of a miscarriage of justice. Commonwealth v. Kelly, 470 Mass. 682, 697 (2015).

Separate indictments charged offenses occurring in Middlesex County and Norfolk County. The cases were consolidated for trial.

The victim was unsure how long they stayed in the second hotel because the "days ran into each other."

In addition, the judge reminded the jurors that they must "decide this case based on the evidence and based upon the evidence alone."

The defendant did not ask the judge to examine the foreperson, who presumably was aware of the notes that both jurors passed to the judge.