NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-850                                          Appeals Court


        SUGARMAN & SUGARMAN, P.C.  vs.  DANIEL B. SHAPIRO.[1]


                        No. 22-P-850.

        Suffolk.     March 1, 2023. – July 7, 2023.

        Present:  Green, C.J., Blake, & Englander, JJ.


Damages, Quantum meruit, Breach of contract.  Contract,
     Attorney, Compensation of attorney, Employment, Performance
     and breach.  Evidence, Settlement offer.  Practice, Civil,
     Instructions to jury, Judgment notwithstanding verdict, New
     trial.




     Civil action commenced in the Superior Court Department on
March 16, 2018.

     The case was tried before Peter B. Krupp, J.


     Richard B. Reiling for the defendant.
     Allen N. David (Avana A. Epperson-Temple also present) for
the plaintiff.


     GREEN, C.J.  The principal question in this appeal is

whether the trial judge erred in submitting to the jury the

plaintiff's claim for damages under a theory of quantum meruit

---

     [1] Doing business as Shapiro & Associates.

despite the existence of a fully integrated written contract between the parties. We conclude that, because the circumstances giving rise to the plaintiff's claim fell outside the terms addressed by the parties' agreement, the judge properly submitted the claim to the jury, and we affirm the judgment.[2]

Background. The plaintiff is a Boston law firm that specializes in personal injury cases. The defendant headed up a law practice that specializes in federal workers' compensation cases (OWCP practice). Effective March 1, 2016, the plaintiff and the defendant entered into an employment and purchase of practice agreement (agreement) under which they agreed to work together through at least March 30, 2019, and possibly March 30, 2020, with respect to the defendant's law practice. Under the parties' agreement, for the year beginning on April 1, 2019, and continuing through March 30, 2020,[3] the defendant held the option either to continue working or to retire, with differing compensation depending on which option he chose. Upon the

---

[2] The defendant also raises challenges to (1) the judge's instructions to the jury on the quantum meruit claim, (2) the court's jurisdiction over the claims, (3) certain evidentiary rulings by the trial judge, and (4) the denial of his motion for judgment notwithstanding the verdict and for new trial.

[3] The agreement described various years as running from April 1 to March 30, despite the fact that March has thirty-one days. Nothing in our decision turns on this fact.

defendant's retirement, the plaintiff was to have control of the entire OWCP practice. From and after the defendant's retirement, however, the agreement provided for compensation to the defendant for seven additional years, in the form of a portion of revenues from the OWCP practice.

During the first year of the agreement, the plaintiff was to provide space for the defendant in its office, as well as "experienced attorney work" to support the OWCP practice. The agreement "contemplated that sometime prior to the expiration of [y]ear [one], [the plaintiff] will designate an attorney to devote [one hundred percent] of his/her professional time to the OWCP [p]ractice with other attorneys and support staff continuing to provide sufficient resources to continue to maintain a high level and quality of service to federal compensation clients; the designation of such personnel is subject to the acceptance and approval of [the defendant]." In return, the defendant was responsible for the salaries of certain then-current employees and for case and practice expenses, and had to pay the plaintiff a monthly amount as "a nominal fee" for office space and services provided by the plaintiff.[4] The defendant was entitled to all profits generated

---

[4] The applicable provision of the agreement stated that the plaintiff would pay "the sum of [e]leven [t]housand ($12,500.00) [d]ollars per month." The discrepancy is not material to any issue in this appeal.

from the OWCP practice that first year. Beginning in the agreement's second year, while the plaintiff was to continue providing space and attorney work to the OWCP practice, all income from the OWCP practice was to be deposited in an OWCP practice operating account, from which the plaintiff and the defendant were to be compensated pursuant to formulas set forth in the agreement.

The agreement included a provision regulating the termination of the parties' arrangement, and the allocation of accrued expenses, if they decided at any time before March 30, 2017 (i.e., within thirteen months after inception), not to continue working together. In the event of such a termination, and after the allocation of accrued expenses, the defendant was to retain the OWCP practice, as well as "all practice and case expenses going forward." The agreement was otherwise silent on any termination following March 30, 2017. Perhaps predictably enough (if not so predictably as to have been addressed in the agreement), at some point after March 30, 2017, the parties developed irreconcilable differences and, in a telephone conversation between the defendant's attorney and the plaintiff's managing partner on November 29, 2017, the defendant's attorney advised the plaintiff that the defendant wished to "unwind" the parties' relationship, taking his former staff and clients with him. Soon thereafter, on or about

December 6, 2017, the defendant left the plaintiff's office with all the cases from the OWCP practice.  Importantly for present purposes, the cases the defendant took with him included more than eight thousand hours of unbilled work by the plaintiff's attorneys and paralegals over the approximately twenty months since the parties had commenced their collaborative arrangement.

The plaintiff brought claims for breach of contract and the duty of loyalty, and for quantum meruit, and the defendant counterclaimed for breach of contract and fiduciary duty.  The jury found no breach of contract or breach of the duty of loyalty or fiduciary duty by either party, but awarded the plaintiff $350,316.75 on its quantum meruit claim.[5]  After denial of the defendant's motion for judgment notwithstanding the verdict and for new trial, judgment entered on the jury verdict, and this appeal followed.[6]

---

[5] Other counterclaims brought by the defendant were resolved in the plaintiff's favor on motions for summary judgment and for a directed verdict.

[6] Prior to trial, the defendant moved to dismiss the plaintiff's claims for damages for want of subject matter jurisdiction, arguing that, under the Federal Employees' Compensation Act, any claim for the legal fees at issue "is valid only if approved by the Secretary [of Labor]," 5 U.S.C. § 8127(b), and that the Secretary's decision is "final" and "not subject to review by . . . a court by mandamus or otherwise." 5 U.S.C. § 8128(b).  The Superior Court judge denied the defendant's motion to dismiss, and the defendant renews his jurisdictional challenge on appeal.  There was no error.  The plaintiff's claims do not implicate any decision by the Secretary of Labor concerning legal fees.  Instead, through its

Discussion. 1. Quantum meruit. As he argued in his unsuccessful motion for judgment notwithstanding the verdict and for new trial, the defendant argues both that the judge should not have submitted the plaintiff's claim for quantum meruit to the jury, and that the judge instructed the jury erroneously on how to consider the claim.

a. Submission of quantum meruit claim to the jury. The defendant's contention that the plaintiff's quantum meruit claim was legally precluded relies on the general rule that "[a] plaintiff is not entitled to recovery on a theory of quantum meruit where there is a valid contract that defines the obligations of the parties." Boston Med. Ctr. Corp. v. Secretary of the Executive Office of Health & Human Servs., 463 Mass. 447, 467 (2012). See Restatement (Third) of Restitution and Unjust Enrichment § 2(2) (2011) ("A valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment"). Because the relationship of the parties in the present case was defined by a fully integrated written contract, the defendant

claim for quantum meruit, the plaintiff sought to recover the value of services it performed for the defendant's benefit, a claim plainly within the jurisdiction of the Superior Court. See, e.g., G4S Tech. LLC v. Massachusetts Tech. Park Corp., 479 Mass. 721, 722 (2018); Liss v. Studeny, 450 Mass. 473, 473-474 (2008).

asserts that no recovery under an equitable quasi contract theory is available.

The general rule, however, is not without exception.  In particular, comment c to § 2 of the Restatement (Third) of Restitution and Unjust Enrichment explains that "[r]estitution claims of great practical significance arise in a contractual context . . . when a valuable performance has been rendered under a contract that is . . . ineffective to regulate the parties' obligations.  Applied to any such circumstance, the statement that there can be no unjust enrichment in contract cases is plainly erroneous."[7]

As we have observed, the agreement was glaringly silent concerning the allocation of accrued revenues and expenses in the event of any dissolution of the parties' arrangement after the completion of the first year but before the defendant's retirement during or after the third year.[8]  Though the parties acknowledged that the agreement was an integrated contract

---

[7] A claim in quantum meruit is closely related to a claim for unjust enrichment:  "[t]he underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party."  Salamon v. Terra, 394 Mass. 857, 859 (1985).

[8] The agreement did include provisions regarding expenses and revenues, but those provisions assumed that the parties would continue to work together, and that the OWCP practice would stay with the plaintiff when the defendant retired.

"pertaining to the subject matter contained herein,"[9] that summary statement does not supply contractual regulation of the circumstances giving rise to the parties' current dispute.

In the light of the duties imposed on the plaintiff to provide office space and attorney work, as well as evidence presented at trial about the work that the plaintiff's attorneys actually performed for the defendant's benefit, it was not error for the judge to conclude that it was appropriate for the jury to consider the plaintiff's claim for equitable recovery, through quantum meruit in the absence of a contractual provision addressing those circumstances.  Cf. Zabin v. Picciotto, 73 Mass. App. Ct. 141, 151 (2008) (where attorney's contingency fee agreement is terminated, attorney may recover fees under theory of quantum meruit).

b.  Jury instructions.  The defendant contends that the judge's instructions to the jury on the plaintiff's quantum meruit claim were incorrect in two respects.  First, the defendant asserts that the judge mischaracterized the agreement to suggest that it was not an integrated contract.  Second, the defendant contends that the judge failed to instruct the jury

---

[9] The agreement contained an integration clause which confirmed that it "constitutes the entire agreement among the parties pertaining to the subject matter contained herein and supersedes all prior agreements, representations and understandings of the parties."

that, to establish entitlement to damages in quantum meruit, the plaintiff was required to prove that it conferred a benefit on the defendant.  We are not persuaded.

A trial judge has wide discretion in framing the language of jury instructions.  See Kiely v. Teradyne, Inc., 85 Mass. App. Ct. 431, 441 (2014).  Additionally, a judge "is not required to use exact language 'so long as all necessary instructions are given in adequate words.'"  Commonwealth v. Stewart, 460 Mass. 817, 824 (2011), quoting Commonwealth v. Marrero, 427 Mass. 65, 72 (1998).  "We 'evaluate the charge as a whole, looking for what meaning a reasonable juror could put to the words of the trial judge.'"  Stewart, supra, quoting Commonwealth v. Waite, 422 Mass. 792, 804 (1996).

First, as we have explained in the preceding section, though the agreement stated that it was integrated, it was silent on the circumstances giving rise to the parties' dispute. It accordingly was not error for the judge to instruct the jury that the agreement did not address the parties' obligations as they related to the plaintiff's claim for damages in quantum meruit.[10]  In any event, the jury heard repeatedly from the

---

[10] The judge instructed the jury as follows:

"I instruct you as a matter of law that the employment and purchase of practice agreement, which was admitted as [e]xhibit 1, does not cover the dispute in question here. Specifically, in the event the relationship between [the

parties, and the judge reiterated in his instructions,[11] that the agreement was integrated, so the defendant's argument is misplaced as a matter of fact.

Regarding the required elements of the plaintiff's claim for quantum meruit, the judge instructed the jury that the plaintiff needed to show that (1) it "provided services to [the defendant]"; (2) "with a reasonable expectation of being paid by [the defendant]"; (3) "[the defendant] had reason to believe that [the plaintiff] expected to be paid"; and (4) "[the defendant] permitted [the plaintiff] to act without stopping their work or otherwise objecting to [the plaintiff] expecting to be paid."

The defendant fixes on the absence of the word "benefit" in the above elements, but viewing the judge's instructions as a whole, we perceive no error. Immediately before laying out the elements, the judge defined the claim of quantum meruit as "the concept that no one who benefits by the labor or materials of

---

plaintiff] and [the defendant] terminates and [the defendant] takes the OWCP practice with him after the first year of the agreement, the agreement does not address whether [the defendant] must pay anything to [the plaintiff] for the services [the plaintiff's] lawyers provided to [the defendant] or his clients."

[11] The judge explained that the agreement was "fully integrated" but that, "[t]o the extent a fully integrated agreement does not address a particular issue or situation, you may be required, as I will instruct you below, to prevent the unjust enrichment of one party or the other."

another should be unjustly enriched" (emphasis added).  With this context, the jury would have understood from the judge's instruction that it was their charge to find whether the plaintiff conferred a measurable benefit on the defendant.  The charge then required the plaintiff to establish, among other things, that it "provided services to" the defendant, "with a reasonable expectation of being paid."  In context, the charge properly conveyed the elements of the claim, and the jury heard testimony and saw time reports about the amount of work the plaintiff's attorneys performed in support of the OWCP practice, as well as evidence of the billing rate charged for the attorney hours provided for the OWCP practice.  See General Dynamics Corp. v. Federal Pac. Elec. Co., 20 Mass. App. Ct. 677, 683 (1985) (jury could award damages where, among other things, they could have found or fairly inferred that plaintiff agreed to provide materials or services).

2.  Evidentiary issues.  The defendant's claims of error in certain evidentiary rulings by the judge require only brief discussion.[12]  We "do not disturb a judge's decision to admit

---

[12] We need not address the defendant's argument that the judge erred in excluding evidence of his damages, as the jury's conclusion that the plaintiff did not commit a breach of the agreement rendered that evidence immaterial.  See Karen Constr. Co. v. Lizotte, 396 Mass. 143, 147 (1985).

evidence absent an abuse of discretion or other legal error." Zucco v. Kane, 439 Mass. 503, 507 (2003).

a. Evidence of settlement discussions. The defendant first contends that the plaintiff should not have been allowed to introduce evidence of a conversation between its managing partner and the defendant's attorney, in which the defendant's attorney advised the plaintiff of the defendant's desire to "unwind" their business relationship.[13] Contrary to the defendant's contention, the testimony did not constitute evidence of settlement discussions, and was properly admitted.[14]

The testimony on which the defendant bases his challenge provided background context for the parties' actions as they began to unwind their relationship. Additionally, the

_____

[13] The plaintiff's managing partner testified that the conversation with the defendant's attorney went as follows:

"[The defendant's attorney] said, 'No, [the defendant] wants to leave with his people and take all the cases and everything with him.' And I said, 'Well, I think that's fine as long as, you know, we get paid something fair for our time.' I didn't really have a number in mind or even a thought about it. And [the defendant's attorney] said, 'That sounds reasonable to me.' . . . And from then on it was just trying to work out the details."

[14] Evidence of settlement discussions is not admissible to "prove or disprove the validity or amount of a disputed claim." Mass. G. Evid. § 408(a) (2023). Such evidence may be admitted, however, if "it 'is relevant for some other purpose' than proving or disproving the amount or validity of a claim." Filbey v. Carr, 98 Mass. App. Ct. 455, 461 (2020), quoting Dahms v. Cognex Corp., 455 Mass. 190, 198-199 (2009). See Mass. G. Evid. § 408(b) (2023).

conversation took place before any claim was made by either party or any litigation loomed on the horizon. It merely showed how the parties' business relationship ended, without any discussion of liability or damages. See, e.g., Slive & Hanna, Inc. v. Massachusetts Comm'n Against Discrimination, 100 Mass. App. Ct. 432, 442 n.19 (2021) (statements admissible where they were relevant to claim that did not exist when statements were made).

b. Time and billing records. To support its quantum meruit claim, the plaintiff introduced time records of three attorneys who worked for the OWCP practice. At trial, the defendant objected to the evidence on the basis of inadequate foundation, contending that the witness through whom the records were introduced had inadequate understanding of the billing software through which the time records were entered, stored, and reported. We discern no abuse of discretion in the judge's ruling that the plaintiff's managing partner was competent to describe how the firm's time records were maintained. See Mass. G. Evid. § 901(a) (2023) (authentication satisfied where proponent "produce[s] evidence sufficient to support a finding that the item is what the proponent claims it is"). The managing partner also testified to the manner in which the records were created, using the plaintiff's billing software program. This testimony, along with the testimony describing

and authenticating the records, laid a sufficient foundation for the introduction of the evidence; the omission of additional information, such as custody of the records, went to the weight, not the admissibility, of the evidence.[15]  There was no error in admitting the time records.[16]

3. <u>Motion for judgment notwithstanding the verdict and for new trial</u>.  Following the jury's verdict, the defendant moved unsuccessfully for judgment notwithstanding the verdict and for new trial on the ground that, among other things, the verdict was against the weight of the evidence.  A judge may set aside a verdict as against the weight of the evidence only when, drawing all inferences in favor of the nonmoving party, the judge determines that "the jury 'failed to exercise an honest and reasonable judgment in accordance with the controlling principles of law.'"  <u>O'Brien</u> v. <u>Pearson</u>, 449 Mass. 377, 384 (2007), quoting <u>Robertson</u> v. <u>Gaston Snow & Ely Bartlett</u>, 404

---

[15] To the extent the defendant separately asserts, for the first time on appeal, that the records were inadmissible hearsay, we note that the defendant's argument devolves to a challenge to the judge's finding that the evidence met the foundational requirements for admission as a business record.

[16] The defendant's argument that the time records were "unethically obtained" is unavailing.  See <u>Commonwealth</u> v. <u>Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court</u>, 439 Mass. 352, 361 n.7 (2003) ("Arguments relegated to a footnote do not rise to the level of appellate argument").  It fails in any event, since the time records were business records of the plaintiff, not confidential client information the plaintiff was prohibited from disclosing.

Mass. 515, 520, cert. denied, 493 U.S. 894 (1989). We review the defendant's claim of error for an abuse of discretion. See O'Brien, supra.

Assuming (without deciding) that the defendant is correct in his contention that the agreement required the plaintiff to designate an attorney to devote one hundred percent of the attorney's professional time to the OWCP practice,[17] the evidence at trial was sufficient to establish that three different attorneys were designated to support the defendant's OWCP practice at various times and were prepared to devote one hundred percent of their time to the practice. Though the defendant approved each designation, he thereafter refused to work with each of the three. The evidence was sufficient to support the jury's conclusion that the plaintiff did not commit a breach of the agreement by failing to designate an attorney to devote one hundred percent of their time to the OWCP practice, and we discern no abuse of discretion by the trial judge in denying the defendant's motion to set aside the verdict.

Judgment affirmed.

---

[17] As the plaintiff observes, the relevant provision of the agreement stated that "[i]t is contemplated that sometime prior to the expiration of [y]ear [one], [the plaintiff] will designate an attorney to devote [one hundred percent] of his/her professional time to the OWCP Practice" (emphasis added).